UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DANIEL RODRIGUEZ, | ) No. CV 09-5979-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 24, 2009, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 23, 2009, and October 23, 2009. The parties filed a Joint Stipulation on March 19, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on September 6, 1958. [Administrative Record ("AR") at 22, 96.] He completed high school and some college [AR at 22, 138], and has past relevant work as an insulation installer. [AR at 15, 24, 44, 122-24, 135-36, 143-50.]

On June 19, 2007, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income payments, claiming an inability to work since September 30, 2005, due to liver disease, degenerative joint disease, and spinal problems. [AR at 9, 53, 96-101, 134.] After his applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 53-63, 66.] A hearing was held on March 10, 2009, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 19-48.] A vocational expert ("VE") also testified. [AR at 44-47.] On April 23, 2009, the ALJ determined that plaintiff was not disabled. [AR at 9-17.] When the Appeals Council denied plaintiff's request for review of the hearing decision on July 17, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 1-4.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).

Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to

determine whether the claimant has sufficient "residual functional capacity" ("RFC")[1] to perform his past work; if so, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520(g), 416.920(g); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff has not engaged in any substantial gainful activity since September 30, 2005, the alleged onset date of the disability.[2] [AR at 11.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: history of hepatitis C; history of back pain; obesity; degenerative joint disease; hypertension; atypical chest pain; left arm nodule; and left foot pain/spur. [AR at 12.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity to perform "light work" with certain limitations.[3] [AR at 13.] At step four, the ALJ concluded that plaintiff is unable to perform his past relevant work. [AR at 15-16.] At step five, using the Medical-Vocational Rules as a

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2] The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through June 20, 2007. [AR at 11.]

[3] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Here, the ALJ specifically found that plaintiff "can frequently climb ramps and stairs, but he may only occasionally climb ladders, ropes, or scaffolds; he can frequently balance, kneel, crouch, crawl, and stoop; he must avoid concentrated exposure to hazards such as machinery and heights; and he may only occasionally walk on uneven terrain." [AR at 13.]

framework and the vocational expert's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 16-17.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 17.]

## V.
## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly (1) determine that plaintiff was capable of performing the jobs identified by the vocational expert; (2) consider a treating physician's opinion and/or fulfill the ALJ's duty to develop the record; (3) evaluate plaintiff's RFC; (4) consider the side effects of plaintiff's medications; and (5) pose a complete hypothetical question to the vocational expert. [Joint Stipulation ("JS") at 2-3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    ABILITY TO PERFORM OTHER WORK**

Plaintiff contends that the ALJ improperly determined that plaintiff's RFC permits him to perform the jobs identified by the VE. [JS at 3-5, 8.] Relying on the Dictionary of Occupational Titles ("DOT"),[4] the VE testified that plaintiff could perform the occupations of assembler of small products, packing line worker, and wire preparation machine tender. [AR at 44-46.] Plaintiff contends that the ALJ's adoption of this finding conflicts with the ALJ's own RFC determination that plaintiff "must avoid concentrated exposure to hazards such as machinery," because the DOT shows that these jobs involve exposure to machinery. [Id. (quoting AR at 13).]

"[T]he best source for how a job is generally performed is usually the [DOT]," and for an ALJ to properly conclude that a job is generally performed in a manner "that contradicts the [DOT], the record must contain 'persuasive evidence to support the deviation.'" Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435). When an ALJ's decision

---

[4] "The DOT is 'the Secretary's primary source of reliable job information.'" Johnson v. Shalala, 60 F.3d 1428, 1434 n.6 (9th Cir. 1995) (quoting Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990)).

contradicts the DOT, the ALJ must offer an explanation of why he is rejecting the DOT's description. See Johnson, 60 F.3d at 1434. Specifically, "to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain the deviation." Pinto, 249 F.3d at 847; see Johnson, 60 F.3d at 1435 (holding that the DOT raises a presumption as to how a job is performed; the presumption is rebuttable "only insofar as the record contains persuasive evidence to support the deviation").

      The ALJ asserted, and the VE represented [AR at 46], that "the [VE's] testimony is consistent with the information contained in the [DOT]." [AR at 17.] But the ALJ and the VE did not explore whether the identified jobs involve exposure to machinery. [See AR at 16-17, 44-47.] Even a cursory reading of the DOT's descriptions makes clear that the ALJ did not meet his burden of showing that plaintiff can perform the three jobs identified by the VE. The first occupation the VE identified, assembler, small products II, involves assembling "parts together by hand, using handtools, portable powered tools, or bench machines" and "[p]erforming fastening, force fitting, or light cutting operations, using machines such as arbor presses, punch presses, taps, spot-welding or riveters." DOT No. 739.687-030. The VE next identified the occupation of packing-line worker, which involves performing tasks such as "[s]ort[ing] and mat[ing] pairs [of footwear] and plac[ing] them on [the] conveyor" "as [a] member of [a] conveyor line crew." DOT No. 753.687-038. As a conveyor belt could be considered "machinery," this job may also involve exposure to machinery. The final job identified by the VE, wire preparation machine tender, involves

> [t]ending machines that automatically cut, strip, and mark identifying stripes or other information on wire used in electrical installations or assemblies:  Places reel of specified wire onto play-out spindle of machine and threads wire through feed rolls.  Adjusts machine controls to regulate factors . . . .  Starts machine and observes operation to detect machine malfunction. . . . May install drive adjustment and tension or adjustment rolls in machine. . . . May tend machine that automatically bends wire to specified angle.  May tend machine that crimps and attaches connectors and terminals to wire ends. May tend numerical control wire preparation machine . . . .

DOT No. 728.685-010.

Thus, all three jobs identified by the VE appear to involve exposure to machinery, and appear to plainly contradict the ALJ's determination that plaintiff "must avoid concentrated exposure to hazards such as machinery." [AR at 13.] The ALJ did not mention, let alone attempt to explain, the inconsistency between the VE's testimony and the DOT's description of these occupations. [See AR at 16-17.] Although there may be legitimate reasons why these occupations may not necessarily entail concentrated exposure to machinery, there are none in the record. See Harman v. Apfel, 211 F.3d 1172, 1177 (9th Cir. 2000) ("[J]udicial review in cases under the Social Security Act is limited to a review of the administrative record for a determination of whether the Commissioner's decision is supported by substantial evidence in the record."). There is no persuasive evidence justifying the ALJ's departure from the DOT. Remand is warranted on this issue.

### B. TREATING PHYSICIAN'S OPINION

Plaintiff contends that the ALJ inappropriately rejected the opinion of one of plaintiff's treating physicians, Dr. Rina Iofel. [JS at 7-11, 14-15.] Specifically, plaintiff asserts that the ALJ did not provide legitimate reasons for his decision to accept instead the opinions of examining and non-examining physicians. [Id.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 CFR §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, if a treating physician's opinion conflicts with other medical evidence, "an ALJ may only reject it by providing specific and legitimate reasons that are

7

supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citation omitted); Social Security Ruling ("SSR")[5] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

According to the record, Dr. Iofel began treating plaintiff on September 28, 2007, and their relationship continued through at least October 2008. [AR at 432-33, 473-74; see JS at 9.] Dr. Iofel appeared to be one of plaintiff's primary care physicians, and she treated plaintiff for, among other things, pain in his left arm [AR 428-29, 552-54, 616-17], dizziness [see AR at 432-33, 537-38], shortness of breath [AR at 473-74], back pain [AR at 514-15], and pain in his left leg [AR at 552-54, 616-17]. In addition, Dr. Iofel reviewed and considered medical evidence obtained by other clinicians. [See, e.g., AR at 391-93 (noting findings of other physicians), 514-15 (noting side effects from hepatitis C treatment).] On October 17, 2008, Dr. Iofel completed a form containing her assessment of plaintiff's "ability to do work-related activities on a day-to-day basis in a regular work setting." [AR at 391-93.] She opined, for example, that plaintiff could sit for less than two hours out of an eight-hour day and needed to walk around every ten minutes; plaintiff could stand for ten minutes before changing position; plaintiff had limitations in fingering, pushing and pulling; and plaintiff's impairments would cause him to be absent from work more than three times per month. Id. The ALJ specifically rejected Dr. Iofel's assessment. [AR at 13-14.]

The ALJ provided several reasons for his decision to reject Dr. Iofel's opinion. First, the ALJ asserted that Dr. Iofel's opinion was "not supported by the objective evidence or the treatment records." [AR at 13.] This reason fails to reach the level of specificity required for rejecting an opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To

---

[5] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882, F.2d 1453, 1457 (9th Cir. 1989).

8

say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); see also McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"). Moreover, Dr. Iofel specifically cited objective medical findings that supported her opinions. She noted that x-rays of plaintiff's lumbar spine supported certain postural and functional limitations [AR at 392; see AR at 197, 578], and that electromyography results consistent with carpal tunnel syndrome supported plaintiff's limitations in fingering and pushing and pulling. [AR at 392; see AR at 576-82.] The ALJ's failure to mention this objective evidence, and his conclusory assertion that Dr. Iofel's opinion "appears to be based upon the claimant's subjective complaints" [AR at 13-14], reflect an improper selective consideration of the medical evidence. See Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (error for ALJ to "selectively focus[] on . . . [evidence] which tend[s] to suggest non-disability"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for ALJ to ignore or misstate competent evidence in order to justify his conclusion).

The ALJ also stated that he discredited Dr. Iofel's opinion because "the notes from Dr. Iofel lack a detailed examination comparable to the comprehensive evaluation by [the State Agency physician]." [AR at 14 (citations omitted).] As explained above, however, Dr. Iofel saw plaintiff numerous times in a period exceeding twelve months in duration, and she cited specific objective medical evidence to support her opinion.[6] Although an ALJ may properly reject a treating physician's opinion that is "conclusory, brief, and unsupported by objective medical findings,"

---

[6] The ALJ's attempt to undermine Dr. Iofel's opinion by noting that she "emphasiz[ed] the importance of exercise and advise[d] the claimant to stop using tobacco" [AR 13-14 (citations omitted)] is perplexing and unavailing. Dr. Iofel treated plaintiff for over one year as one of his primary care physicians. It is not surprising that she advised plaintiff to make lifestyle changes to improve his health, and it is certainly not a legitimate reason to discount her credibility.

1 Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004), that is simply not the
2 case here.

3 Finally, the ALJ also noted that Dr. Iofel's opinion of plaintiff's limitations "was solicited by
4 the claimant's attorney," and that Dr. Iofel "appear[ed] to be advocating for the claimant to receive
5 benefits, rather than simply treating him." [AR at 14.] However, "in the absence of other evidence
6 to undermine the credibility of a medical report, the purpose for which the report was obtained
7 does not provide a legitimate basis for rejecting it." Reddick v. Chater, 157 F.3d 715, 726 (9th Cir.
8 1996); see Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (the source of a report is a
9 factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for
10 opinion). There is no evidence in the record suggesting any impropriety on the part of Dr. Iofel.
11 The ALJ may not assume that a treating physician lacks credibility merely because she was
12 supportive of her patient. See Reddick, 157 F.3d at 725-26 (error for ALJ to reject physician's
13 opinion because physician was "compassionate and supportive of the patient"); Lester, 81 F.3d
14 at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients
15 collect disability benefits." (quoting Ratto v. Sec., Dep't of Health & Hum. Servs., 839 F. Supp.
16 1415, 1426 (D. Or. 1993))). Remand is warranted to reconsider Dr. Iofel's opinion.[7]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could
remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th
Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir.
1984). In this case, remand is appropriate in order to reassess plaintiff's ability to perform other
work and to properly evaluate Dr. Iofel's opinion. The ALJ is instructed to take whatever further
action is deemed appropriate and consistent with this decision. Accordingly, **IT IS HEREBY**

---

[7] In light of the Court's remand order, the Court does not address plaintiff's other contentions of error, but notes that reassessment of Dr. Iofel's opinion may impact the ALJ's RFC determination and any hypothetical question posed to a VE, if further VE testimony is warranted.

1 **ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 21, 2010

*/s/ Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE